## TULLIS v. STONE.

(Supreme Court, Appellate Division, First Department. January 11, 1907.)

1. CORPORATIONS—OFFICERS—INDIVIDUAL LIABILITY.

In an action to charge defendant, an officer in a corporation, on an alleged individual promise to pay installments on the contract price of a heating plant constructed for the company, evidence *held* not to show such promise, or that plaintiff was entitled to any installments under the contract.

2. ACTIONS—RIGHTS ARISING AFTER COMMENCEMENT.

Where, in an action to recover installments of the contract price for installing a heating plant, it appeared that the owner of the building was entitled under the contract to retain an amount sufficient to indemnify him against a chattel mortgage on a boiler used in the work, plaintiff could not recover on the theory that, after commencing the action, he discharged the mortgage, since, in actions at law, recovery may only be had upon a cause of action complete at the time of the commencement thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, § 735.]

Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Edwin E. Tullis against Samuel H. Stone. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Benjamin F. Feiner, for appellant.
H. Snowden Marshall, for respondent.

LAUGHLIN, J. On the 21st day of February, 1905, the Wolff Construction Company, as owner, entered into an agreement with the plaintiff as contractor, by which the latter agreed to furnish "all the materials and perform all the work for the erection of the low pressure steam-heating apparatus, to be erected in the six-story apartment house, located at northwest corner of Ninety-Seventh street and Madison avenue, New York City (complete in every respect)." It was further expressly agreed that the owner should provide all masonry required, but that the plaintiff was to assume entire responsibility for the work, as shown on the drawings and described in the specifications prepared by the architect, which were made a part of the contract. With respect to the compensation to the contractor for the work and materials, it was provided that the owner should pay $4,200, subject to additions and deductions as therein provided (not involved on this appeal) and that payments should be made only on certificates of the architect in installments, the first of $800 to be made "when all risers are erected," and the second of $600, "on delivery of boiler" and that the payments should be due when the certificates for the same were issued. It was further provided that if at any time there should be evidence of any lien or claim against the contractor for which the owner of the premises might become liable, the owner should have the right to retain out of the payment then due or thereafter to become due, an amount sufficient to completely in-

demnify him against such lien or claim. The Manados Realty Company, which was making a building loan to the Wolff Construction Company, accepted an order from the latter to make the payments to the plaintiff under his contract. On or prior to the 17th of March, 1905, the plaintiff claims to have erected all of the risers, and prior to that day he had deposited the boiler in the street in front of the premises. The defendant was the treasurer of the Manados Realty Company. On said 17th day of March, no payment had been made to the plaintiff. He testified that on that day he was informed by Mr. Roach, the president of the Wolff Construction Company, that it was insolvent; that his contract with it was worthless; that its interest in the building was about to be foreclosed; and that the Manados Realty Company was also insolvent; that he called on the defendant and informed him of these facts, and stated that, in the circumstances, he could not deliver the boiler and intended to take it away; that the defendant said to him that if he would put the boiler in the cellar, he would personally make the first two payments, aggregating $1,-400, on plaintiff's contract, and that thereupon plaintiff delivered the boiler in the cellar. The recovery has been had upon the theory of an original promise on the part of the defendant individually to pay the $1,400, as testified to by the plaintiff. It does not appear that the defendant had any interest in the building or in the contract, except as treasurer of the company making the building loan.

The plaintiff further testified that, after he delivered the boiler, he demanded payment of the defendant, who requested a certificate of the architect of authority from Mr. Roach, the president of the Wolff Construction Company; that he endeavored to obtain such consent or certificate, but being unable to do so, wrote the defendant on the 21st day of March, 1905, demanding that the defendant fulfill "his verbal contract and guaranty" to make the payment of the $1,400; that he never obtained a certificate of the architect entitling him to either payment. On cross-examination, the plaintiff was asked to relate again his conversation with the defendant, and, in narrating it, he did not testify that the defendant agreed to make any payment individually, and he also testified that the defendant wanted him to put in the boiler in accordance with the contract, and that his understanding was that he was to put the boiler in in accordance with his contract with the Wolff Construction Company, and that if he did that, he was to receive $1,400 when he got the certificate of the architect, and he admitted that he did not put in the boiler in accordance with his contract with the Wolff Construction Company, which required him to set it on the foundation. He further admitted that he did not submit to the architect for his approval working plans before he commenced the work in the building, as required by his contract, and that he did not submit working plans as to the risers until on the day on which he claims to have had the conversation with the defendant upon which this action is based.

The plaintiff called as witnesses to part of his conversation with the defendant, Mr. Hartwell, a builder, and Mr. Raff, who was superintendent for Mr. Hartwell. Hartwell testified that he called to see the defendant and found him engaged in a conversation with plain-

tiff; that he heard the defendant say: "When you have done your work you will get your money," to which the plaintiff replied, "Well, it means that I am not going to get my money;" that the witness asked the plaintiff what he wanted, to which the plaintiff replied, "I want my money;" that the witness asked, "How much is there due you?" to which the plaintiff replied, "$800 for risers and $600 for the boiler;" whereupon the witness said, "Well, Mr. Stone, what do you want?" to which the defendant replied, "I want that boiler put in;" whereupon the witness said, "Well, will you pay for it?" to which the defendant replied, "Yes, I will pay for that boiler, Roach or no Roach, when it was set on the foundations." Raff testified that when he came into the room, the plaintiff was asking for the $800 payment for the risers which the defendant refused but said, "Mr. Tullis, if you put that boiler in the building I will make you the payment." The defendant flatly contradicted the testimony of the plaintiff, and denied he made any individual promise in the premises. His testimony is to the effect that on the 17th day of March, the plaintiff called at his office, and, in the presence of Mr. Roach, the president of the Wolff Construction Company, asked for the "boiler payment" and was informed by defendant that the risers were not right, and that plaintiff had not given the architect the "lay out" to which plaintiff replied that he would fix the risers and would give the architect the "lay out"; that plaintiff said he wanted the $600 "boiler payment" and defendant answered in substance that if Mr. Roach wanted it advanced, he would pay it; that later on, in the presence of Mr. Hartwell, the plaintiff demanded the $600 as the "boiler payment" to which defendant replied that he would pay him for the boiler if he put it in, at the same time saying, in substance, that the company could advance the money to the construction company; and that subsequently, after the plaintiff delivered the boiler in the cellar, and when he was about to advance, with the consent of Mr. Roach, $600 for the boiler, and on the architect's certificate which he and Roach had induced the architect to give as to the boiler, it was discovered that there was a chattel mortgage of $585 on it, and the defendant, acting for the company, refused to advance the money until the lien of the mortgage was discharged.

Mr. Roach, the president of the Wolff Construction Company, testified in behalf of the defendant with respect to the conversation between the defendant and the plaintiff on the 17th day of March, that the bureau of incumbrances would not permit the boiler to remain on the street and that the plaintiff asked defendant if he would waive the question as to the first payment and advance the $600 as the "boiler payment," to which the defendant replied that he had no objection if the witness was willing, and if plaintiff would comply with his contract by putting the boiler on its foundations in accordance with the contract and specifications, which the plaintiff agreed to do; that after the delivery of the boiler in the cellar, he was in the defendant's office when the plaintiff was present, and the defendant was about to write a check to make the $600 payment, when the plaintiff admitted that there was a chattel mortgage on the boiler which he said he would remove the following morning, whereupon the defendant refused to

make the payment. This witness also testified that the plaintiff failed to submit for the approval of the architect, working plans, and that, in consequence of this failure, some of the risers were erected in a manner interfering with the design of the architect in other respects and it became necessary to change them. The architect testified that he refused to issue the certificate for the first payment, because the plaintiff failed to comply with the requirements of the specifications and he stated in detail the respects in which the plaintiff failed to perform his contract, and said that he repeatedly drew plaintiff's attention to these omissions. The plaintiff was called in rebuttal, and denied that the architect refused the certificate upon the grounds stated by him, and testified that in November, 1905, he paid the note to secure which the chattel mortgage was given, but he admitted that the mortgage was on record at the time he asked for the payment, and so remained until November, if not later.

The learned trial judge, in denying the motion for a new trial, wrote a memorandum stating that the credence given by the jury to the testimony in support of the plaintiff's theory of the case, surprised him, but he denied the motion upon the ground that that was a question for the jury. We are of opinion that the verdict should have been set aside as against the weight of the evidence. It is highly improbable that the defendant, who was merely acting as an agent for the Manados Realty Company, would obligate himself personally in the matter. The fair construction of all the testimony, except that of the plaintiff on his direct examination, is that the defendant was speaking for his company. Moreover, it is quite clear that the plaintiff had not earned or become entitled to the first two payments under his contract with the Wolff Construction Company. He concedes this as to the second, at least, and admits that he did not procure the certificate of the architect as to either; but he claims in one part of his testimony that the personal agreement made by the defendant with him was more favorable, and in another part of his testimony admits that under defendant's agreement with him he was not to be entitled to payment for the boiler except upon compliance with his contract with the Wolff Construction Company with respect to installing it. Upon his own testimony, it is clear that he did not comply with that contract in two respects: First, he did not place the boiler on the foundation; and, secondly, there being a chattel mortgage of record against the boiler, and the defendant and his company, through him, having notice thereof before the boiler was attached to the realty, the indebtedness secured by the chattel mortgage constituted a claim or charge upon which the owner might be liable under the contract.

The learned counsel for the plaintiff seeks to sustain the recovery upon the theory that the plaintiff subsequently paid the debt for which the chattel mortgage was security. The difficulty with that theory is that this is an action at law, and the plaintiff was only entitled to recover upon a cause of action complete at the time he commenced the action. Moreover, we think the plaintiff did not sustain the burden of proof to establish an original individual promise by the

defendant to pay either the first or second installment under the contract.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and McLAUGHLIN and SCOTT, JJ., concur. HOUGHTON, J., dissents.